IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **MUSTAFA AHMED AL-HAWSAWI,**<br>    Detainee,<br>    Guantanamo Bay Naval Station<br>    Guantanamo Bay, Cuba.<br><br>    *Petitioner,*<br><br>                v.<br><br>**JOSEPH R. BIDEN JR., LLOYD J. AUSTIN III, and BRIGADIER GENERAL LANCE A. OKAMURA**<br><br>    *Respondents.* | **PETITION FOR WRIT OF HABEAS CORPUS**<br><br>Case No.: 21-CV-2907 |

## PRELIMINARY STATEMENT

1. Petitioner Mustafa al-Hawsawi ("Mr. al-Hawsawi" or "Petitioner") seeks a writ of habeas corpus to challenge the legality of his detention at the Guantanamo Bay Naval Base in Guantanamo Bay, Cuba. Petitioner was healthy until 2003, when he was abducted by Pakistani agents and then transferred to CIA custody at unknown black sites. At those sites, CIA agents performed "enhanced interrogation techniques" and non-consensual forceful rectal penetration on Petitioner before transferring him to the military prison at Guantanamo Bay. After a reasonable opportunity for further investigation or discovery, there likely will be evidentiary support to show that as a result of this treatment, Petitioner now suffers from chronic colorectal and digestive conditions. Petitioner's chronic colorectal and digestive problems have been exacerbated by Respondents' failure to provide effective medical care to the Petitioner while he

1

has been in their custody. These chronic colorectal and digestive problems have progressively worsened over Petitioner's time in Respondents' custody and continue to this day.

2.Petitioner seeks an injunction requiring Respondents to submit for this Court's approval, a plan for effective treatment of Petitioner; an injunction, pursuant to Army Regulation 190-8, compelling a Mixed Medical Commission to examine Petitioner; and, an order, pursuant to Army Regulation 190-8, requiring Petitioner's repatriation to the Kingdom of Saudi Arabia.

## JURISDICTION

3.Petitioner brings this action under 28 U.S.C. § 2241(a), (c)(1), and (c)(3), which empower the court to hear and grant habeas corpus petitions filed by foreign detainees held at Guantanamo Bay.

4.Petitioner further invokes this Court's jurisdiction to address habeas corpus claims by detainees seeking relief from conduct which violates the Eighth Amendment of the United States Constitution.

## VENUE

5.This Court is the proper venue for this action, since at least one respondent resides in or may be found in the district, and all respondents are either officers of the United States or an agency thereof acting in their official capacities. 28 U.S.C. § 1391(b); 1391(e).

## PARTIES

6.Petitioner Mustafa al-Hawsawi is a Saudi Arabian citizen who was abducted by Pakistani agents in March 2003 and was then transferred to CIA custody and detained at unknown black sites until 2006. In September 2006 the CIA transferred Petitioner to the military prison at the Guantanamo Bay Naval Base where he is still presently being detained.

7. Respondent Joseph R. Biden Jr. is the President of the United States and the Commander-in-Chief of the Armed Forces of the United States. Petitioner is being detained pursuant to President Biden's authority as Commander-in-Chief, under the laws and usages of war, or alternatively, under the November 13, 2001 Military Order promulgated by former President Bush. President Biden is ultimately responsible for Petitioner's unlawful detention. He is sued in his official capacity.

8. Respondent Lloyd J. Austin III is the Secretary of the United States Department of Defense. Pursuant to the President's authority as Commander-in-Chief, under the laws and usages of war, or alternatively, pursuant to the November 13, 2001 Military Order promulgated by former President Bush and previously enforced by former Secretary of Defense Donald Rumsfeld and his successors, Respondent Austin has been charged with the responsibility of maintaining the custody and control of Petitioner. He is sued in his official capacity.

9. Brigadier General Lance A. Okamura is the Commander of the U.S. Military Joint Task Force, which is responsible for administering the detention operations at Guantanamo Bay, Cuba. General Okamura has supervisory responsibility for Petitioner's detention. He is sued in his official capacity.

10. When the term "Respondents" is used throughout this petition it should be understood as referring to the named Respondents and their predecessors.

11. Petitioner has filed two previous habeas petitions: *Mustafa Bin-Ahmad al-Hawsawi v. Robert Gates*, No. 08-01645 (D.D.C.) and *Mustafa Ahmed Adam al-Hawsawi*, No. 15-1257 (D.D.C.).

## FACTUAL ALLEGATIONS

12.     Petitioner, Mustafa al-Hawsawi was born in Jeddah, Saudi Arabia on August 5, 1968.

13.     In March 2003, Petitioner was abducted by Pakistani agents.

14.     The CIA, agents of Respondents, took custody of Petitioner in 2003.

15.     Petitioner was healthy at the time he was taken into custody by Respondents' agents.

16.     The CIA hid and detained Petitioner at unknown black sites from 2003 to 2006.

17.     During this period, the CIA repeatedly subjected Petitioner to "enhanced interrogation techniques."

18.     Additionally, the CIA subjected Petitioner to non-consensual forceful rectal penetration.

19.     In September 2006, the CIA transferred Petitioner to the military prison at the Guantanamo Bay Naval Base, currently under the control of Respondents and their agents.

20.     Petitioner is a person in the custody of the United States, and he has not been otherwise classified as either an enemy prisoner of war, retained person, or civilian internee.

21.     Petitioner meets the criteria for an "other detainee" in Army Regulation 190-8.

22.     Petitioner desires to be repatriated to the Kingdom of Saudi Arabia.

## MEDICAL CARE AT GUANTANAMO

23.     Petitioner's medical care has been and is the responsibility of Respondents and their agents throughout the entirety of his custody.

24.     From 2006 to the present, medical care at Guantanamo has been provided by hundreds of rapidly overturning medical personnel.

25. The Medical Staff at Guantanamo ("Medical Staff") has not had access to detainees' medical records from their detention at CIA black sites.

26. The Respondents have adopted a policy preventing the Medical Staff from asking detainees about the origins of any injury that may have arisen at the black sites.

27. The remoteness and security of Guantanamo makes it difficult for the Medical Staff to access equipment and specialists necessary to provide adequate medical care for the detainees.

## PETITIONER'S CHRONIC MEDICAL CONDITIONS

28. Petitioner was healthy when he was taken into custody by Respondents' agents.

29. After being taken into custody by the CIA, Petitioner has suffered from a number of digestive and colorectal problems since at least June 19, 2003.

30. Petitioner has suffered from chronic constipation since at least May 25, 2006 to the present.

31. Additionally, Petitioner has suffered from internal hemorrhoids with bouts of prolapsing hemorrhoids since 2005.

32. Petitioner has also suffered from diverticulosis from February 2007 to 2012.

33. In addition, Petitioner has been diagnosed with anal fissures on multiple occasions, including in 2005, 2007, 2012, 2019, and 2020.

34. Petitioner has also been diagnosed with rectal bleeding on multiple occasions, including in 2015, 2017, and 2020.

35. Petitioner has experienced painful straining while defecating on multiple occasions, including 2004, 2019, and 2020.

36. Additionally, Petitioner has suffered from pelvic floor dysfunction since at least April 5, 2017.

37. After a reasonable opportunity for further investigation or discovery, there likely will be evidentiary support that Petitioner has suffered from many additional musculoskeletal ailments as a result of the pain from his chronic digestive and colorectal problems.

38. Petitioner has also suffered from lower back pain since at least August 6, 2018.

39. Finally, Petitioner has suffered from Sacroiliac (SI) Joint Dysfunction since at least November 9, 2020.

**ESCALATION OF PETITIONER'S CHRONIC DIGESTIVE AND COLORECTAL PROBLEMS**

40. In June 2003, Petitioner experienced three-to-four episodes of diarrhea.

41. By December 2003, Petitioner had been suffering intermittent upper abdominal pain and bloating diarrhea for five months.

42. Also in December 2003, Petitioner was diagnosed as having hemorrhoids, which were aggravated by the diarrhea.

43. By January 2004, Petitioner's hemorrhoids had become large, inflamed, and tender.

44. By May 2004, Petitioner was experiencing several hard stools per day with occasional blood in the stool.

45. At this point, Petitioner began to alter his eating habits to lessen the amount of times that he would have to defecate.

46. Following this year of digestive and colorectal problems, in August 2004, Petitioner was finally diagnosed with Grade II hemorrhoids causing straining and preventing him from exercising.

47. By January 2005, Petitioner's hemorrhoids were prolapsing.

48. On September 29, 2005, the Medical Staff diagnosed Petitioner with a large sentinel tag and tender palpable fissure on his rectum.

49. The Medical Staff performed a banding procedure on Petitioner's internal hemorrhoids on November 26, 2005.

50. The Medical Staff performed a second banding procedure on Petitioner's internal hemorrhoids on December 8, 2005.

51. By February 2006, Petitioner's prolapsing hemorrhoids became so severe he had to use Preparation-H cream as lubricant to push his rectal tissue back into place.

52. On May 25, 2006, following two years of digestive and colorectal problems, the CIA transferred Petitioner to an unknown location for a hemorrhoidectomy.

53. In February 2007, after Petitioner was transferred to Guantanamo, the Medical Staff performed a colonoscopy on Petitioner which showed that he again suffered from hemorrhoids, anal fissures, and internal and external diverticulosis hemorrhoids.

54. By January 2012, these hemorrhoids had worsened into Grade II and III internal hemorrhoids which often prolapsed.

55. The following year, in January 2013, Petitioner notified the Medical Staff that his hemorrhoids were accompanied by pinching and itching in his anus.

56. The Medical Staff told Petitioner that his pinching and itching were a result of his prior hemorrhoidectomy.

57. A year and a half later, on September 20, 2014, the Medical Staff performed a colonoscopy revealing sigmoid diverticular.

58.     By May 29, 2015, Petitioner had developed continuous hemorrhoidal prolapse, accompanied by rectal bleeding.

59.     In August 2015, the Medical Staff discovered that Petitioner's rectal bleeding had led to iron deficiency anemia.

60.     In April 2016, the Medical Staff found another anal skin tag on Petitioner.

61.     Following nine years of continuous painful digestive and colorectal symptoms, by August 2, 2016, Petitioner's hemorrhoids had grown to Grade III/IV, making banding, arterial ligation, or stapled hemorrhoidectomy no longer viable treatments.

62.     On October 14, 2016, the Medical Staff performed a second surgery to remove Petitioner's internal hemorrhoids.

63.     Following the second surgery, in April 2017, the Medical Staff confirmed that Petitioner continued to suffer from painful straining while defecating, rectal bleeding, a hemorrhoidal skin tag, internal hemorrhoids, and also suffered from transverse colon polyps.

64.     Also, in April 2017, the Medical Staff performed a colonoscopy of Petitioner revealing a tubular adenoma.

65.     By November 2018, Petitioner's pain had become so excruciating that he rated his pain as 10/10.

66.     Following multiple surgeries and over a decade of severe digestive and colorectal problems, on December 4, 2018, the Medical Staff consulted a new gastrointestinal doctor who determined that Petitioner suffered from surgical changes leading to anal stenosis.

67.     By January 2019, Petitioner needed to strain painfully for every bowel movement.

68.     As of March 2019, Petitioner was unable to sit for longer than two hours and fifteen minutes.

69. As of June 2019, Petitioner's 10/10 pain was lasting for 10-12 hours at a time.

70. As of August 2019, Petitioner's anal stenosis had worsened to the point where a rectal balloon dilation was considered.

71. Throughout his detention, the Medical Staff fed Petitioner a rotating diet of fiber supplements, natural and prescription laxatives, and provided him topical creams for his digestive and colorectal problems.

72. In addition, the Medical Staff prescribed multiple medications targeting Petitioner's symptoms which include his constipation, prolapsing hemorrhoids, and anal fissures.

73. The Medical Staff has also prescribed multiple medications and treatments targeting Petitioner's pain and migraines.

74. As a result of the digestive and colorectal problems and resulting pain, the Medical Staff has provided therapeutic pillows, a rehabilitation chair, and repeated electro-stimulation therapy to allow Petitioner to function.

75. As of 2020, Petitioner suffered from constipation; anal fissures; chronic hemorrhoids; pelvic floor dysfunction; painful straining while defecating accompanied by neck pain, back pain, and SI joint dysfunction; anal stenosis; transverse colon polyps; and rectal bleeding.

76. As of 2020, the Medical Staff was scheduled to perform numerous colonoscopies and anoscopies.

**PETITIONER'S CURRENT MEDICAL CONDITIONS**

77. Despite the varied medical procedures and treatments provided by the Medical Staff at Guantanamo, Petitioner's medical issues have persisted throughout his eighteen years of detention and still remain.

78. Petitioner continues to suffer from chronic constipation.

79. Petitioner continues to suffer from chronic internal and external hemorrhoids.

80. Petitioner continues to suffer from chronic rectal bleeding.

81. Petitioner continues to suffer from anal fissures.

82. Petitioner continues to suffer from anal stenosis.

83. Petitioner continues to suffer from pelvic floor dysfunction.

84. Petitioner continues to suffer from lower back pain.

85. Petitioner continues to suffer from SI joint dysfunction.

86. Petitioner continues to suffer from transverse colon polyps.

## INEFFECTIVENESS OF MEDICAL CARE

*Transiency of Care for Petitioner's Digestive and Colorectal Conditions*

87. Continuity of care is required for adequate patient treatment.

88. Proper documentation and flow of information, as well as communication to the patient and between medical staff, are required for adequate treatment of medical issues.

89. Continuity of medical providers is also required for adequate treatment of medical issues.

90. Lack of continuity of medical providers and lack of flow of information are both associated with contradictory diagnosis and treatment, misinformation regarding the patient's conditions, and higher mortality rates.

91. Over the course of his eighteen years of detention at the CIA black sites and Guantanamo, hundreds of different medical personnel have examined and/or treated Petitioner.

92. Over the course of his eighteen years of detention at the CIA black sites and Guantanamo, at least seventeen different general practitioners have treated Petitioner.

93. Over the course of his eighteen years of detention at the CIA black sites and Guantanamo, at least four different general surgeons have treated Petitioner.

94. Over the course of his eighteen years of detention at the CIA black sites and Guantanamo, at least seven different gastrointestinal specialists have treated Petitioner.

95. Each surgeon, specialist and the Medical Staff did not have access to actual medical records from the CIA black sites.

96. Because the Medical Staff did not have the information described in paragraph 95, the medical providers failed to adequately treat Petitioner.

97. After a reasonable opportunity for further investigation or discovery, there likely will be evidentiary support to show that the rapid turnover in medical professionals, in addition to the lack of medical records, has caused the Medical Staff to give Petitioner conflicting medical information.

98. In 2006, 2013, and again in 2014, general practitioners and general surgeons told Petitioner that he suffered from rectal prolapse.

99. However, in October 2014, the Medical Staff brought in a different general surgeon who told Petitioner there was no evidence that he suffered from true rectal prolapse.

100. Due to the rapid turnover in medical professionals, the Medical Staff has also given Petitioner conflicting medical diagnoses.

101. On October 9, 2018, the Medical Staff told Petitioner that Irritable Bowel Syndrome was likely not among his problems.

102. However, on October 12, 2018, the Medical Staff reported that they suspected that Petitioner suffered from Irritable Bowel Syndrome.

103. On October 16, 2018, Petitioner was prescribed a 72-hour Irritable Bowel Syndrome medication trial which, the Medical Staff reported, had "regrettable" results.

104. After a reasonable opportunity for further investigation or discovery, there likely will be evidentiary support to show that the rapid turnover in medical professionals, also caused the Medical Staff to provide conflicting medical treatment.

105. In 2018, Medical Staff placed Petitioner on Tramadol as consistent, daily treatment to manage Petitioner's pain.

106. In 2019, however, the Medical Staff determined that Tramadol was not an appropriate treatment option due to its many negative side effects and long-term risks.

107. Accordingly, on February 12, 2019, the Medical Staff discontinued Petitioner's use of Tramadol and placed him on Celebrex instead.

108. Even after determining that Tramadol was not an appropriate treatment, on February 26, 2019, the Medical Staff provided Petitioner 100mg of Tramadol.

109. After a reasonable opportunity for further investigation or discovery, there likely will be evidentiary support which shows that the Medical Staff was providing conflicting medical information, diagnoses, and treatment, which escalated Petitioner's symptoms as described in paragraphs 40-75.

110. This evidentiary support will likely show that the contradictory diagnoses and treatment and misinformation regarding Petitioner's conditions caused Petitioner's diarrhea to escalate into constipation; anal fissures; chronic hemorrhoids; pelvic floor dysfunction; painful straining while defecating accompanied by neck pain, back pain, and SI joint dysfunction; anal stenosis; transverse colon polyps; rectal bleeding; and diverticulosis.

### *Care by Unqualified Medical Staff*

111. Qualified medical staff is required for adequate patient care.

112. Throughout Petitioner's eighteen years of detention at the CIA black sites and Guantanamo, Respondents did not use medical providers with the qualifications necessary to treat his chronic digestive and colorectal problems.

113. While detaining Petitioner, Respondents provided health care predominantly through general practitioners.

114. General practitioners do not have the specialized knowledge or expertise required to treat Petitioner's chronic digestive and colorectal conditions.

115. General practitioners and general surgeons do not specialize in treating digestive and colorectal problems.

116. Colorectal specialists, however, are experts in the diagnosis and treatment of disorders in the colon, rectum, and anus.

117. General practitioners have significantly less diagnostic accuracy than specialists, increasing the potential for dangerous misdiagnosis.

118. General practitioners are less likely than specialists to correctly diagnose chronic constipation.

119. General practitioners are much less likely to correctly diagnose hemorrhoids than specialists.

120. General practitioners are more likely to continue with ineffective treatments for colorectal problems than specialists.

121. Treatment of Petitioner's digestive and colorectal problems described in paragraphs 78-86, requires consistent care by qualified colorectal and gastroenterology specialists.

122. Treatment of Petitioner's chronic digestive and colorectal problems alleged in paragraphs 78-86 requires a specialist with expertise in both colorectal surgery and diseases of the colorectal system.

123. After a reasonable opportunity for further investigation or discovery, there likely will be evidentiary support that Petitioner was never seen by a colorectal specialist.

124. Colorectal specialists are uniquely qualified to treat Petitioner's symptoms because they have specialized training and years of experience treating hemorrhoids, diverticulosis, pelvic floor disorders and colon polyps.

125. After a reasonable opportunity for further investigation or discovery, there likely will be evidentiary support showing that the Medical Staff's lack of qualified care in treating Petitioner's chronic digestive and colorectal problems resulted in the escalation of Petitioner's symptoms from constipation to anal fissures; chronic hemorrhoids; pelvic floor dysfunction; painful straining while defecating accompanied by, neck pain, back pain, and SI joint dysfunction; anal stenosis; transverse colon polyps; rectal bleeding; and diverticulosis.

126. This evidentiary support will likely show that this lack of qualified care has caused Petitioner to continue to suffer from the medical conditions alleged in paragraphs 78-86.

***Failure to Treat the Trauma Underlying Petitioner's Chronic Digestive and Colorectal Conditions***

127. While in CIA custody at black sites between 2003 and 2006, Respondents' agents sexually abused Petitioner by subjecting him to non-consensual forceful rectal penetration.

128. After a reasonable opportunity for further investigation or discovery, there likely will be evidentiary support that this sexual abuse led to a Dysfunction of the Gut-Brain Interaction ("DGBI").

129. The brain is connected to the gut through the enteric nervous system which controls bowel movements. This connection affects bowel movements and other digestive tract functions.

130. DGBIs may have long term adverse outcomes if not treated properly.

131. Psychotherapy, regardless of the technique, is a common treatment which has been shown to produce superior results to conventional medical treatment in treating DGBIs.

132. In order to treat DGBIs, medical professionals, including psychotherapists, must be aware of and consider external and internal influences on the brain and the resulting problems such as digestive and colorectal dysfunctions.

133. Respondents' Medical Staff at Guantanamo has not had and does not have access to the records regarding the sexual abuse of Petitioner at the CIA black sites.

134. Respondents have prevented the Medical Staff from asking Petitioner about injuries that may have arisen from his detention at the CIA black sites.

135. The Medical Staff is unaware of Petitioner's sexual abuse.

136. The Medical Staff has failed to consider Petitioner's sexual abuse in their diagnoses and treatment of his digestive and colorectal problems.

137. After a reasonable opportunity for further investigation or discovery, there likely will be evidentiary support showing that this absence of consideration of the trauma from Petitioner's sexual abuse, and the complete lack of psychotherapeutic treatment has resulted in a failure by the Medical Staff to treat Petitioner's DGBI.

138. After a reasonable opportunity for further investigation or discovery, there likely will be evidentiary support which shows that because the Medical Staff has failed to treat Petitioner's DGBI, his chronic digestive and colorectal conditions escalated as described in paragraphs 40-75.

139. This evidentiary support will likely show that Respondents' failure to treat Petitioner's DGBI has resulted in constipation; anal fissures; chronic hemorrhoids; pelvic floor dysfunction; painful straining while defecating accompanied by neck pain, back pain, and SI joint dysfunction; anal stenosis; transverse colon polyps; rectal bleeding; and diverticulosis.

## FIRST CLAIM FOR RELIEF

*Right to Detention Free of Undue Delay of Treatment*
*(Eighth Amendment to the United States Constitution)*

140. Respondents are detaining Petitioner as described in paragraph 6, and as such are responsible for his medical care as described in paragraph 23.

141. Petitioner has been diagnosed with several severe medical issues, including the chronic colorectal issues described in paragraphs 30-39.

142. Petitioner suffers from conditions which are so obvious that a layperson would easily recognize the necessity for a doctor's attention, including his chronic prolapsing hemorrhoids described in paragraphs 31, 47, and 51 and his rectal bleeding described in paragraph 59.

143. Additionally, Petitioner notified Respondents of his severe medical issues on multiple occasions, including those described in paragraphs 45, 55, and 65.

144. Furthermore, Respondents were aware of Petitioner's severe medical issues due to numerous records of medical diagnoses from Respondents' Medical Staff as described in paragraphs 33-34, 42, 46, 48, and 63.

145. Respondents neglected to promptly address several medical issues throughout Petitioner's eighteen-year detention, including those described in paragraphs 30-39.

146. Respondents' policies for providing medical care, including those described in paragraphs 24-27, have caused undue delays in treatment of Petitioner's severe and chronic medical issues.

147. These undue delays have caused Petitioner's diarrhea to be exacerbated into constipation; anal fissures; chronic hemorrhoids; pelvic floor dysfunction; painful straining while defecating causing migraines, neck pain, back pain, and SI joint dysfunction; anal stenosis, transverse colon polyps, rectal bleeding, and diverticulosis.

## SECOND CLAIM FOR RELIEF

*Right to Detention Free of Blatantly Inappropriate Course of Treatment*
*(Eighth Amendment to the United States Constitution)*

148. Petitioner incorporates by reference paragraphs 140-144.

149. Petitioner suffers from a Gut-Brain Dysfunction as described in paragraphs 127-128.

150. Respondents' use of unqualified medical providers to treat Petitioner, as described in paragraphs 111-126, has been and is blatantly inappropriate.

151. Respondents have continued to treat Petitioner with Medical Staff who are not qualified to treat Petitioner's severe and chronic colorectal problems as described in paragraph 123.

152. Respondents have continued to treat Petitioner with Medical Staff who are not qualified to treat Petitioner's Gut-Brain Dysfunction as described in paragraphs 133-137.

### THIRD CLAIM FOR RELIEF

*Right to Detention Free of Deliberate Indifference by Bypassing a Common Treatment*
*(Eighth Amendment to the United States Constitution)*

153. Petitioner incorporates by reference paragraphs 140-144 and 149.

154. In order to permanently resolve Petitioner's Gut-Brain Dysfunction, Respondents must provide treatment of the underlying mental trauma as described in paragraphs 131 and 132.

155. The common and effective method of treatment as described in paragraph 131 requires knowledge and understanding of the sexual abuse and resultant trauma described in paragraph 127, as well as allowing Petitioner to speak about and discuss this abuse and trauma with a psychotherapist.

156. As described in paragraphs 127-128 and 133-136, Respondents have prevented, and continue to prevent, the medical professionals treating Petitioner from discovering, asking about, or otherwise learning of the underlying mental trauma causing Petitioner's Gut-Brain Dysfunction.

### FOURTH CLAIM FOR RELIEF

*Right to Medical Repatriation*
*(Army Regulation 190-8)*

157. As alleged in paragraphs 16 and 19, Petitioner was hidden and detained at CIA black sites from 2003 to 2006. Following Petitioner's detention at CIA black sites, in 2006, Petitioner was transferred and detained in Guantanamo. Petitioner is currently detained in Guantanamo.

158. As alleged in paragraph 22, Petitioner desires to be repatriated.

159. As alleged in paragraphs 20-21, Petitioner meets the criteria to be categorized as an "other detainee".

160. As alleged in paragraph 75, Petitioner currently suffers from constipation; anal fissures; chronic hemorrhoids; pelvic floor dysfunction; painful straining while defecating accompanied by, neck pain, back pain, and SI joint dysfunction; anal stenosis, transverse colon polyps, and rectal bleeding.

161. As alleged in paragraphs 40-75, Petitioner's digestive and colorectal conditions have become chronic throughout his detainment.

162. As alleged in paragraphs 77-86, Petitioner has not recovered despite treatment.

163. As alleged in paragraphs 77-86, Petitioner has continued to suffer from these chronic digestive and colorectal conditions throughout his eighteen years of detention.

164. On November 1, 2021, Petitioner's Prisoner Representative applied for a Mixed Medical Commission to determine if repatriation is appropriate.

## FIRST DEMAND FOR RELIEF

WHEREFORE, Petitioner respectfully requests this Court enter an injunction ordering Respondents to submit a plan for approval by the court detailing the methods by which Respondents will:

a. Provide consistent and timely medical care;

b. Provide care by qualified medical professionals; and

c. Medically address the trauma arising from Respondents' sexual abuse underlying Petitioner's colorectal issues.

## SECOND DEMAND FOR RELIEF

Petitioner also respectfully requests that this Court:

a. Order Respondents to convene a Mixed Medical Commission to examine Petitioner to determine his eligibility for repatriation to the Kingdom of Saudi Arabia; and

b. Based on the determination of the Mixed Medical Commission, order Respondents to repatriate Petitioner to the Kingdom of Saudi Arabia.

**Dated: Hempstead, New York**
November 4, 2021

Respectfully Submitted,

/s/ Stefan H. Krieger

Stefan H. Krieger
Attorney for Petitioner
Hofstra Law Clinic
108 Hofstra University
Hempstead, NY 11549
(516) 463-5934

Student Attorneys Holly Hay, Brittani-Ann A. Campbell, and Aaron Rhodebeck assisted in the preparation of this Petition.