UNCLASSIFIED//FOR PUBLIC RELEASE

## DECLARATION OF STEVEN W. DALBEY

Pursuant to 28 U.S.C. § 1746, I hereby declare as follows:

1. I am the Director for the Office of Detainee Policy in the U.S. Department of Defense (DoD). I report to the Assistant Secretary of Defense for Special Operations and Low-Intensity Conflict (ASD SO/LIC). ASD SO/LIC is the principal civilian advisor to the Secretary of Defense on special operations and low-intensity conflict matters. One of the core responsibilities of the ASD SO/LIC is counterterrorism. I have worked in the Office of Detainee Policy since October 2007 and have served in the role of Director since September 2014. I am responsible for developing policy recommendations and coordinating policy guidance relating to individuals captured or detained by DoD. In this capacity, I am responsible for working with U.S. Southern Command (USSOUTHCOM) and Joint Task Force Guantanamo (JTF-GTMO) on matters involving Guantanamo detainees. I make this declaration based on my personal knowledge and information made available to me in the performance of my official duties.

2. I am familiar with the March 6, 2020, order issued by Judge Collyer in the habeas case of GTMO detainee ISN 063 (al-Qahtani) in which the court ordered DoD to convene a Mixed Medical Commission (MMC) under Army Regulation (AR) 190-8 to assess whether ISN 063 meets the requirements for medical repatriation. This declaration explains why complying with the order would be unworkable for DoD and would result in certain undue burdens and harms to DoD should we be required to comply with that order. In addition to the matters discussed here, I share the concerns enumerated in the Declaration of Rear Admiral Timothy C. Keuhhas, the JTF Commander, regarding the harmful impacts on the detention facility and the health of the detainees from compliance with the order.

1

UNCLASSIFIED//FOR PUBLIC RELEASE

UNCLASSIFIED//FOR PUBLIC RELEASE

3. Under long-standing U.S. policy, DoD has interpreted Section 3-12 of AR 190-8, which implements the provisions of the 1949 Geneva Convention Relative to the Treatment of Prisoners of War relating to Mixed Medical Commissions (MMC), not to apply to unprivileged enemy belligerent detainees at the GTMO detention facility. Therefore, there are no procedures and policies in place to implement an MMC under AR 190-8 for a GTMO detainee. Before DoD could provide an MMC to GTMO detainees, the Department would need to discuss, create, and coordinate governing guidance within the highest levels of the United States Government (USG) and international partners. Given the novelty and nuances involved and the potential precedent that application of an MMC to a GTMO detainee would generate, creating the procedures and policies would require the Executive Branch to conduct extensive planning and a robust deliberative process to fully develop the standards that would apply to a non-international armed conflict (NIAC) and specifically, GTMO detainees. These standards, policies, and procedures would require careful vetting by the military Services, multiple agencies within the Department of Defense (Defense Health Agency, the Undersecretary of Defense for Health Affairs, and the Undersecretary of Defense for Intelligence), the Joint Chiefs, and agencies outside DoD such as the Department of State, the Department of Justice, and the White House.

4. The Geneva Convention, and DoD's implementing regulation, were intended for Enemy Prisoners of War (EPW) in international armed conflicts, like World War II, in which an enemy State's armed forces would be responsible for taking custody of the EPW after the EPW is medically repatriated and would be required to ensure that the individual does not return to the battlefield. Without a credible commitment that GTMO and other al-Qaida detainees who are medically repatriated would refrain or be prevented from re-engaging in hostilities (see DoD Law of War Manual § 9.36.7), it is clear that they would be capable to do so, as not all of the

2

UNCLASSIFIED//FOR PUBLIC RELEASE

UNCLASSIFIED//FOR PUBLIC RELEASE

conditions for medical repatriation prescribed in AR 190-8 would prevent them from doing so. In the case of detainees currently held at GTMO, we have individuals who participated in hostilities by, for example, planning terrorist attacks, facilitating the training or movement of others for the purpose of fighting the United States, and funding operations of high-level al-Qaida leadership. Participation in hostilities in this manner could all continue despite a physical or mental health condition that could qualify a prisoner of war for medical repatriation under the Third Geneva Convention and AR 190-8. With respect to ISN 063, the opposing party to the conflict is not another State, but al-Qaida, and there is no guarantee that al-Qaida would prevent him, if repatriated, from re-engaging in hostilities. Medical repatriation under an MMC and return to hostilities could occur while an appeal of the Court's order is pending. Participation in hostilities by ISN 063 could resume despite the fact he has a mental health condition even assuming that condition could qualify him for medical repatriation under a misapplication of AR 190-8. The GTMO Senior Medical Officer has previously declared that although ISN 063 "has a documented psychiatric history of Adjustment Disorder, Unspecified Anxiety Disorder, Personality Disorder with Borderline and Narcissistic traits, Schizophrenia, and Posttraumatic Stress Disorder," based on symptoms reported by the detainee himself, reports of the guard force, and a mental health history reported by legal counsel, it was difficult to assess his condition because he would not constructively engage with BHU providers. SMO Declaration (21 August 2017) ¶ 15. At that time, the SMO stated that he "did not meet the clinical criteria for a definitive diagnosis of" Adjustment Disorder with Anxiety and Narcissistic traits or Unspecified Anxiety Disorder and his diagnoses were "Unspecified Psychotic Disorder (this means that his psychotic symptoms do not meet all of the diagnostic criteria for a specific psychotic order such as Schizophrenia) and Unspecified Depressive Disorder (the BHU has been

3

UNCLASSIFIED//FOR PUBLIC RELEASE

unable to confirm that Mr. al-Qahtani's non-specific symptoms are related to Posttraumatic Stress Disorder, given his refusal to fully participate in BHU services)." SMO Declaration ¶ 15. My understanding is that such mental health conditions reportedly pre-date ISN 063's detention at GTMO, and the resulting symptoms can be managed through treatment. SMO Declaration ¶¶ 17, 21. Despite ISN 063's inconsistent compliance with his recommended treatment, medical personnel advise that his mental health condition does not affect his ability to perform his activities of daily living or otherwise function normally in the context of detention. SMO Declaration ¶ 20. Therefore, though his counsel argue that his condition would meet the current standard of AR 190-8, his condition would not prevent him from returning to hostilities if released from GTMO based on a decision by an MMC.

5. AR 190-8 provides that the International Committee of the Red Cross (ICRC) will select two doctors from a neutral country to serve on the MMC. Because of the nature of the NIAC under which GTMO detainees are being held, it is not possible to comply with this requirement as all countries have obligations under international law to take measures to support international efforts to counter terrorism, including implementing sanctions against al-Qaida. In addition, the regulation states that the chosen neutral doctors be approved by the parties to the conflict. In the case of this GTMO detainee, the opposing party to the conflict is not another State, but al-Qaida. If neutral doctors cannot be chosen, the regulation allows for the United States to work with the "Protecting Power" to set up a Medical Commission. Under international law, a "Protecting Power" is understood to be a third State that is designated by one State to protect its interests vis-à-vis a second State, when the first State lacks normal diplomatic relations with the second State and the second State consents to such a designation. See DoD Law of War Manual § 18.15. Al-Qaida is not a State and does not have diplomatic relations, and, in the current conflict, no State

4

UNCLASSIFIED//FOR PUBLIC RELEASE

UNCLASSIFIED//FOR PUBLIC RELEASE

has been designated as a Protecting Power for al-Qaida's interests. Therefore, implementing the regulation as written would require the U.S. Government to seek approval of the ICRC appointed doctors by al-Qaida, which would undermine the Government's policy of not negotiating with terrorist groups.

6. There are currently 40 detainees at GTMO. Some of the detainees are High Value Detainees presently being prosecuted by Military Commission. If we are required to comply with the court's order, these detainees, with medical or mental health issues, could apply for medical repatriation by MMC. For example, Walid Bin 'Attash, one of the five individuals being tried by Military Commission for his alleged involvement in the attacks of September 11, 2001, has a prosthetic leg. Al Nashiri, the alleged mastermind of the USS COLE bombing, has been diagnosed with post-traumatic stress disorder. Hadi Al-Iraqi, an alleged al-Qaeda commander charged with multiple violations of the law of war, suffers from chronic pain, peripheral neuropathy, and/or degenerative disk disease. Attempting to develop or implement an MMC process for a GTMO detainee such as ISN 063 would encourage these High Value Detainees to seek an evaluation by an MMC, which could disrupt or complicate the ongoing prosecution efforts. Moreover, a finding by an MMC of medical repatriation eligibility, which could result in release for any of these detainees, would cause serious harm to the Department's efforts to bring these individuals to justice and would pose a threat to national security.

7. At this time, COVID-19 restrictions would severely impact the convening of a Mixed Medical Commission at GTMO. The vast majority of the DoD workforce is operating on a reduced or telework schedule. DoD has issued a stop movement order for all DoD personnel with the exception of mission-essential travel, which remains in effect until the end of June. GTMO has instituted a 14-day quarantine requirement for anyone entering the JTF area, including the

UNCLASSIFIED//FOR PUBLIC RELEASE

UNCLASSIFIED//FOR PUBLIC RELEASE

detention facility.  It is not clear how long these requirements will remain in place but they are

prohibitive to convening a Mixed Medical Commission on the island to examine a GTMO

detainee for the foreseeable future.


I declare under penalty of perjury that the foregoing is true and correct.


Executed on 4 May 2020

Steven W. Dalbey


6


UNCLASSIFIED//FOR PUBLIC RELEASE