UNCLASSIFIED//FOUO

## Unclassified Summary of Basis for Tribunal Decision

### (Enclosure (1) to Combatant Status Review Tribunal Decision Report)

TRIBUNAL PANEL#: 38

ISN #: 10011

### 1. Introduction

As the Combatant Status Review Tribunal (CSRT) Decision Report indicates, the Tribunal has determined that this Detainee shall be classified as an enemy combatant in that he is a member of al Qaida who directly supported al Qaida and has committed belligerent acts against the United States and its interests. In reaching its conclusions, the Tribunal considered both classified and unclassified information. The following is an account of the unclassified evidence considered by the Tribunal and other pertinent information. Classified evidence considered by the Tribunal is discussed in Enclosure (2) to the CSRT Decision Report.

### 2. Synopsis of Proceedings

The Tribunal hearing was conducted on 21 March 2007. The Recorder presented Exhibit R-1 during the unclassified portion of the Tribunal. The primary exhibit, the Unclassified Summary of Evidence (Exhibit R-1), indicates that on 8 September 2001 Mohamed Atta (one of the September 11, 2001 hijackers) sent $2,860 from a Western Union facility in a Safeway facility in Maryland to the Detainee at the Wall Street Exchange, Dubai, United Arab Emirates; that on 8 September 2001, Mohamed Atta sent $5,000 from Western Union at a Giant Store in Maryland to the Detainee at the Wall Street Exchange, Sharjah, United Arab Emirates; that on 9 September 2001, Waleed Al-Shehri (one of the September 11 2001 hijackers) sent $5,000 from a Western Union facility in Logan Airport, Boston, Massachusetts to the Detainee at the Al-Ansari Exchange, Sharjah United Arab Emirates; that on 9 September 2001, Marwan Al-Shehhi sent $5,000 from a Western Union facility in Boston, Massachusetts to the Detainee at the Al-Ansari Exchange, Sharjah, United Arab Emirates; that Mohammed Atta sent a package with Fayez Banihammad's Automated Teller Machine card and checkbook to the Detainee's Post Office box in Sharjah, United Arab Emirates; that on 11 September 2001, the Detainee flew from Dubai, United Arab Emirates to Karachi, Pakistan; that a handwritten nineteen-page telephone and address book containing contact information of numerous al Qaida operatives was found in a laptop computer case associated with the Detainee; and that a laptop computer hard-drive associated with the Detainee contained: al Qaida expense reports from February 2002 to April 2002, detailed information for the families of al Qaida operatives, detailed family information of 22 Yemeni al Qaida operatives

UNCLASSIFIED//FOUO

UNCLASSIFIED//FOUO

along with the status of the operatives, al Qaida expenditure data from 1 January 2002 to 31 December 2002, a list of al Qaida members who were killed or wounded, al Qaida family allowance information from November 2002 to October 2003, detailed al Qaida expense reports from January 2002 to December 2002, detailed al Qaida United States dollars fund serial account information from 1 January 2002 to 15 May 2002, and detailed al Qaida expense information through various incoming and outgoing rupee, Euro, riyal and dirham fund transactions for the period of 1 January 2002 to 31 December 2002.

The Recorder called no witnesses.

The Detainee participated in the Tribunal process. The Personal Representative provided to the Tribunal a Written Statement from the Detainee (Exhibit D-b) based on the Personal Representative's interviews with the Detainee. Exhibit D-b is a response to the Unclassified Summary in which the Detainee denies or provides other explanations for several of the items contained in the Unclassified Summary.

**3. Evidence Considered by the Tribunal**

The Tribunal considered the following evidence in reaching its conclusions:

   a. Exhibits:  D-a and D-b and R-1 through R-13.

   b. Testimony of the following persons:  None.

   c. Statements made by the Detainee.

**4. Rulings by the Tribunal on Detainee Requests for Evidence or Witnesses**

The Detainee made two requests for the production of certain documents and physical evidence that were referenced in the Unclassified Summary. On 21 February 2007 the Detainee requested the laptop, and the information contained on its hard drive, that was seized at the time and place of his capture. On 16 March 2007 the Detainee also requested the nineteen-page phone book that was found in the laptop's case.

The Detainee's proffered on 21 February 2007 that any information contained in the laptop would help him explain the events described in paragraphs 3j through 3r in the Unclassified Summary. The Tribunal President determined on 22 February 2007 that the information contained on the laptop (but not the laptop itself) was relevant and directed the CSRT staff to investigate the availability of the requested information. The CSRT staff located the information and after minimal redaction, provided it to the Personal Representative and the Detainee on 16 March 2007. At that time the Detainee then made a request for the production of the nineteen-page phone book referenced in paragraph 3i

UNCLASSIFIED//FOUO

MEA-CSRT-00000009

UNCLASSIFIED//FOUO

of the Unclassified Summary.  The Detainee proffered that the phone book could not be his since he didn't know enough people to fill a nineteen-page book.  Despite the lack of timeliness (the Tribunal hearing had been scheduled for 19 March 2007), the Tribunal President made a preliminary determination of relevance and directed CSRT staff to investigate the availability of the phone book.  The Tribunal was postponed to allow for this investigation.  The phone book was located on 17 March 2007.  After a review by CSRT staff and others, it was determined that redaction was not necessary.  The Personal Representative and the Detainee were provided with the phone book on 20 March 2007.  The Tribunal was rescheduled for 21 March 2007.

At the hearing, the Detainee indicated that he was provided with the evidence he requested.  The Detainee indicated that he chose not to offer either the laptop information or the phone book as exhibits before the Tribunal.  The Detainee, rather, discussed certain aspects of these items in his statement.  The Detainee understood that he could present this evidence to the Tribunal and freely decided not to do so.

The Tribunal had no need to require the production of these items during the open session.  There was information regarding the laptop and the phone book for the Tribunal to consider during the closed session.

The Detainee's evidence requests and the Tribunal President's determinations are contained in Enclosure (4) to the Combatant Status Review Tribunal Decision Report, Exhibits T-1 and T-2.

The Detainee did not make a request for any other evidence or for the production of any witnesses.

**5. Discussion of Unclassified Evidence**

The Tribunal considered the following unclassified evidence in making its determinations:

a. The Recorder offered Exhibit R-1 into evidence during the unclassified portion of the proceeding.  Exhibit R-1, the Unclassified Summary of Evidence, while helpful in that it provides a detailed outline of what the Tribunal can expect to see, is not by itself persuasive in that it provides conclusory statements with limited supporting unclassified evidence.

The Tribunal accorded significant weight to the Detainee's responses to specific questions asked by the Tribunal members.  During his responses, the Detainee admitted to the following:  receiving four wire transfers from 9/11 attackers Mohammed Atta and Waleed Al-Shehri just prior to the attacks on targets in the United States on 11 September 2001 (the "9/11 Attacks") as alleged in Exhibit R-1; correspondence and communication with 9/11 hijackers Mohammed Atta and Waleed Al-Shehri prior to the 9/11 Attacks; close relationships with senior al Qaida operatives Khalid Sheikh Mohammed and Ramzi bin al-Shiba; learning of the planned 9/11 Attacks from a conversation with Ramzi bin al-

UNCLASSIFIED//FOUO

MEA-CSRT-00000010

UNCLASSIFIED//FOUO

Shiba on 10 September 2001; fleeing United Arab Emirates on 11 September 2001 upon orders from Khalid Sheikh Mohammed and Ramzi bin al-Shiba because of the pending 9/11 Attacks; traveling to Afghanistan for a nine-month period to train at al Farooq (a known al Qaida training camp for senior and important al Qaida operatives); associating with known al Qaida members and carrying and using a weapon while in Afghanistan in support of jihadists; and meeting Usama bin Laden approximately four to five times.

The Tribunal did not find credible the Detainee's claims that he was not a member of al Qaida. Rather, the Tribunal concluded the Detainee's actions and relationships support a finding that the Detainee is a member of al Qaida and an enemy combatant.

b. A verbatim transcript of the Tribunal hearing conducted on 21 March 2007 is attached as Enclosure (3) to this report.

c. The Tribunal also relied on certain classified evidence in reaching its decision. A discussion of the classified evidence is found in Enclosure (2) to the Combatant Status Review Tribunal Decision Report.

## 6. Consultations with the CSRT Legal Advisor

No issues arose during the course of this hearing that required consultation with the CSRT legal advisor.

## 7. Conclusions of the Tribunal

Upon careful review of all the evidence presented in this matter, the Tribunal makes the following conclusions:

a. The Detainee was mentally and physically capable of participating in the proceeding. No medical or mental health evaluations were deemed necessary.

b. The Detainee understood the Tribunal proceedings. The Detainee chose to participate in the Tribunal process, as indicated in Exhibit D-a.

c. The Detainee shall be classified as an enemy combatant as defined in the Deputy Secretary of Defense Order of 7 July 2004 and Deputy Secretary of Defense Memorandum regarding Implementation of Combatant Status Review Tribunal Procedures for Enemy Combatants Detained at U.S. Naval Base Guantanamo Bay, Cuba dated 14 July 2006, in that the Detainee is a member of al Qaida who directly supported al Qaida forces and has committed belligerent acts against the United States and its interests.

ISN # 10011
Enclosure (1)
Page 4 of 5

UNCLASSIFIED//FOUO

MEA-CSRT-00000011

UNCLASSIFIED//FOUO

**8. Dissenting Tribunal Member's Report**

None.  The Tribunal reached a unanimous decision.

**9. Compliance with the Detainee Treatment Act of 2005**

The CSRT has complied with the Detainee Treatment Act of 2005.  In making a determination of status or disposition of the Detainee, the CSRT has assessed, to the extent practicable, whether any statement derived from, or relating to, the Detainee was obtained as a result of coercion; and the probative value, if any, of any such statement. There were no matters raised during the CSRT that had any bearing on the Detainee's treatment or any statements attributed to him.  The statements made by the Detainee during the proceedings were made voluntarily and without any duress or coercion.

Respectfully submitted,

BERNARD E. DELURY, CAPT JAGC USN
Tribunal President

ISN # 10011
Enclosure (1)
Page 5 of 5

UNCLASSIFIED//FOUO

MEA-CSRT-00000012