UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MUSTAFA AHMED AL-HAWSAWI       )
                               )
    Petitioner,                )
                               )
v.                             )   Civil Case No. 21-2907 (RJL)
                               )
JOSEPH R. BIDEN JR., *et al.*, )
                               )
    Respondents.               )

# MEMORANDUM OPINION
(March 12, 2024) [Dkt. #12]

Petitioner Mustafa al-Hawsawi is a citizen of Saudi Arabia who has been detained at Guantanamo Bay since 2006 due to his alleged role in the terrorist attacks of September 11, 2001. During his detention, al-Hawsawi has suffered from chronic and severe digestive and colorectal conditions and he alleges that he has received inadequate medical care to address these conditions. In November 2021, al-Hawsawi filed a petition for a writ of habeas corpus asserting three Eighth Amendment claims as well as a claimed right to have a mixed medical commission determine if he is entitled to medical repatriation. Pending before the Court is respondents' motion to dismiss or for judgment on al-Hawsawi's habeas petition. For the reasons explained below, the Court will enter judgment in respondents' favor on all of al-Hawsawi's claims.

I. **BACKGROUND**

Mustafa al-Hawsawi is a citizen of Saudi Arabia who was seized by Pakistani agents in March 2003 and placed in CIA custody due to his alleged role in the September

1

11, 2001 terrorist attacks as a member of al-Qaeda. Pet. for Writ of Habeas Corpus [Dkt. #1] ("Pet.") ¶¶ 6, 12–14; *see also* Unclassified Summ. of Basis for Tribunal Decision [Dkt. #12-4]. Al-Hawsawi alleges that from 2003 to 2006, he was detained at unknown CIA "black sites" where he was subjected to enhanced interrogation techniques and non-consensual forceful rectal penetration. Pet. ¶¶ 16–18. In September 2006, al-Hawsawi was transferred to the United States Naval Base in Guantanamo Bay, Cuba ("Guantanamo"), where he remains to this day. *Id.* ¶¶ 6, 19.

According to al-Hawsawi, he was healthy when taken into CIA custody, but he has suffered from a myriad of digestive and colorectal conditions dating back to the early months of his detention. *Id.* ¶¶ 28–29. Al-Hawsawi has suffered and continues to suffer from chronic constipation, chronic internal and external hemorrhoids, chronic rectal bleeding, anal fissures, anal stenosis, pelvic floor dysfunction, painful straining while defecating, lower back pain, sacroiliac joint dysfunction, and transverse colon polyps. *Id.* ¶¶ 30–36, 38–39, 75, 78–86. Despite undergoing various medical procedures and receiving prescription medications, supplements, topical creams, and other treatments from the medical staff at Guantanamo, al-Hawsawi's medical issues have persisted throughout his detention and continue to the present. *Id.* ¶¶ 49–53, 57, 62, 64, 71–74, 77.

In November 2021, al-Hawsawi filed this petition for a writ of habeas corpus, suing President Joseph R. Biden, Jr., Secretary of Defense Lloyd J. Austin, III, and Brigadier General Lance A. Okamura, then-commander of Joint Task Force Guantanamo (collectively, "respondents"). *Id.* ¶¶ 7–10. Al-Hawsawi's allegations focus on the medical care he has received at Guantanamo, which he believes has been inadequate. *Id.* ¶¶ 87–

139. Specifically, he alleges that he has received medical attention from "hundreds" of personnel, and that lack of continuity has led to conflicting diagnoses and treatments and thus an overall lower quality of care. *Id.* ¶¶ 87–110. The quality of care has also suffered, he alleges, from the fact that only general practitioners, not colorectal specialists, have treated him. *Id.* ¶¶ 111–126. Finally, he alleges that medical staff have failed to diagnose and treat the condition underlying his various medical issues—a so-called Disorder of the Gut-Brain Interaction ("DGBI")—a failure that he says results from a policy preventing medical staff from obtaining records documenting the sexual abuse he suffered at black sites, which he believes is the cause of his digestive and colorectal problems. *Id.* ¶¶ 127–139.

These alleged medical deficiencies underpin al-Hawsawi's four claims for relief: three claims under the Eighth Amendment asserting violations of his (1) "right to detention free of undue delay of treatment," (2) "right to detention free of blatantly inappropriate course of treatment," and (3) "right to detention free of deliberate indifference by bypassing a common treatment"; and one claim asserting a right to medical repatriation under Army Regulation 190-8. *Id.* ¶¶ 140–164. He requests two forms of relief: an injunction requiring respondents to submit a plan for approval by the Court detailing how respondents will provide adequate medical care going forward, and an order that respondents convene a mixed medical commission to examine al-Hawsawi's eligibility for medical repatriation to Saudi Arabia. *Id.* at 19–20.

In response to the habeas petition, respondents filed a motion to dismiss for lack of jurisdiction or for judgment on the merits. Resp. to Pet. for a Writ of Habeas Corpus &

3

Mot. to Dismiss or for J. [Dkt. #12] ("Mot."). Respondents argue that al-Hawsawi has failed to demonstrate that they were deliberately indifferent to his medical condition, as is required to support an Eighth Amendment claim, but instead that al-Hawsawi's claims amount to a medical difference of opinion regarding his diagnosis and treatment. *Id.* at 6–10. Respondents further argue that the Court should dismiss al-Hawsawi's request for a mixed medical commission for lack of subject-matter jurisdiction or alternatively deny it on the merits. *Id.* at 10–12. Al-Hawsawi opposed the motion, Pet.'s Opp'n to Mot. [Dkt. #26] ("Opp'n"), and respondents filed a reply, Resp'ts' Reply Mem. Supp. Mot. [Dkt. #29] ("Reply"). On the Court's leave, al-Hawsawi filed a surreply. Surreply to Reply [Dkt. #35] ("Surreply"). Respondents' motion is now ripe for decision.

## II.   LEGAL STANDARD

Federal courts have subject matter jurisdiction over habeas corpus actions challenging a Guantanamo detainee's conditions of confinement. *Aamer v. Obama*, 742 F.3d 1023, 1031–33 (D.C. Cir. 2014). Although "[i]t is well-established that dispositive motions under the Federal Rules of Civil Procedure are appropriate in habeas proceedings," *Khadr v. Bush*, 587 F. Supp. 2d 225, 229 (D.D.C. 2008), the D.C. Circuit has also recognized that "[h]abeas review for Guantanamo detainees need not match the procedures developed by Congress and the courts specifically for habeas challenges to criminal convictions." *Al-Bihani v. Obama*, 590 F.3d 866, 876 (D.C. Cir. 2010). Instead, the Supreme Court has "consciously [left] the contours of the substantive and procedural law of detention open for lower courts to shape in a common law fashion." *Id.* at 870. Petitioner here argues that because respondents' motion presents material outside the

4

habeas petition, the Court "must" treat the motion as one for summary judgment under Federal Rule of Civil Procedure 56. Opp'n at 7. However, this disregards the procedural flexibility recognized in *Al-Bihani*. Accordingly, the Court finds it appropriate to treat respondents' motion as a motion to dismiss or for judgment on the pleadings, akin to a motion under Federal Rule of Civil Procedure 12. *See, e.g., Abdulrazzaq v. Trump*, 422 F. Supp. 3d 281, 285–86, 287 n.4 (D.D.C. 2019) (applying a Rule 12(b)(6) standard to respondents' motion to dismiss in response to a Guantanamo detainee's Eighth Amendment habeas claim, while also considering material attached to the petitioner's opposition briefing).

**III. ANALYSIS**

    a. Eighth Amendment Claims

The Eighth Amendment's prohibition on inflicting "cruel and unusual punishments," U.S. Const. amend. VIII, imposes a "government[al] obligation to provide medical care for those whom it is punishing by incarceration." *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). A prisoner's Eighth Amendment claim is harder to establish than is a claim for medical malpractice, though: the prisoner "must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Brown v. District of Columbia*, 514 F.3d 1279, 1283 (D.C. Cir. 2008) (quoting *Estelle*, 429 U.S. at 106). To state such a claim, the prisoner must allege that officials knew that he "face[d] a substantial risk of serious harm and disregard[ed] that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994). "Deliberate indifference includes subjective and objective components; an official 'must both be aware of facts from which

5

the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Bernier v. Allen*, 38 F.4th 1145, 1151 (D.C. Cir. 2022) (quoting *Farmer*, 511 U.S. at 837).

Setting aside whether al-Hawsawi faces a substantial risk of serious harm, he has failed to plausibly allege that respondents have disregarded that risk. Al-Hawsawi's own allegations show a continuous and rather robust course of medical attention and treatment from the medical staff at Guantanamo. To examine and diagnose al-Hawsawi's various conditions, the medical staff has performed three colonoscopies—in February 2007, September 2014, and April 2017—with additional colonoscopies and anoscopies scheduled as of 2020. Pet. ¶¶ 53, 57, 64, 76.[1] Other allegations specifically identify the Guantanamo medical staff as having rendered other diagnoses and medical opinions over the years: an opinion in January 2013 that anal pinching and itching was caused by a prior hemorrhoidectomy, *id.* ¶¶ 55–56; a discovery in August 2015 that al-Hawsawi's rectal bleeding led to iron deficiency anemia, *id.* ¶ 59; the discovery in April 2016 of "another anal skin tag" on al-Hawsawi, *id.* ¶ 60; and a confirmation in April 2017 that al-Hawsawi "continued to suffer from painful straining while defecating, rectal bleeding, a hemorrhoidal skin tag, internal hemorrhoids, and also suffered from transverse colon polyps," *id.* ¶ 63. And in December 2018, the staff consulted a new gastrointestinal doctor for another opinion on al-Hawsawi's condition. *Id.* ¶ 66.

---

[1] Those colonoscopies revealed "hemorrhoids, anal fissures, and internal and external diverticulosis hemorrhoids" in February 2007, Pet. ¶ 53; "sigmoid diverticular" disease in September 2014, *id.* ¶ 57; and "a tubular adenoma" in April 2017, *id.* ¶ 64.

6

As treatment, the medical staff performed a surgery to remove al-Hawsawi's internal hemorrhoids in October 2016 (his second such operation, after one in May 2006, before he was transferred to Guantanamo). *Id.* ¶¶ 52, 62. And on a more regular basis—indeed, "[t]hroughout his detention"—the medical staff "fed Petitioner a rotating diet of fiber supplements, natural and prescription laxatives, and provided him topical creams for his digestive and colorectal problems," *id.* ¶ 71; "prescribed multiple medications targeting Petitioner's symptoms which include his constipation, prolapsing hemorrhoids, and anal fissures," *id.* ¶ 72; "prescribed multiple medications and treatments targeting Petitioner's pain and migraines," *id.* ¶ 73; and "provided therapeutic pillows, a rehabilitation chair, and repeated electrostimulation therapy to allow Petitioner to function," *id.* ¶ 74.

In sum, al-Hawsawi's own allegations "demonstrate that his condition has been evaluated, monitored, and treated throughout his detention." *Abdulrazzaq*, 422 F. Supp. 3d at 288; *see also* Opp'n at 15 (acknowledging that al-Hawsawi has been "evaluated by numerous GI specialists including: sixteen gastroenterology visits, eleven gastrosurgery consults, and at least one colorectal surgeon visit"). In response to this argument, al-Hawsawi focuses entirely on his claim that he has a DGBI, which, he says, underlies his many medical conditions but which the Guantanamo medical staff have failed to diagnose or treat. Opp'n at 10–26. The central problem with that argument, as respondents point out, is that he simply never alleges any facts giving rise to an inference that respondents had subjective knowledge that al-Hawsawi had a DGBI and that they failed to take measures to address it. Pet. ¶¶ 128–139; *see* Mot. at 8–10; Reply at 12–14. Rather, as discussed above, he alleges all sorts of measures taken to abate the medical risks diagnosed

7

by the medical staff at Guantanamo.[2] The most that could possibly be inferred is that respondents were negligent in diagnosing al-Hawsawi, which is insufficient to state an Eighth Amendment claim. *Estelle*, 429 U.S. at 106.

The Court does not question the seriousness of al-Hawsawi's medical condition. However, because al-Hawsawi raises no more than a "difference of opinion between a physician and a patient," *United States ex rel. Hyde v. McGinnis*, 429 F.2d 864, 868 (2d Cir. 1970), he cannot state an Eighth Amendment claim. The Court will therefore enter judgment for respondents on all three of al-Hawsawi's Eighth Amendment claims regarding his medical treatment at Guantanamo.

b. Claim for Medical Commission to Determine Repatriation Eligibility

Al-Hawsawi's final claim is for respondents to convene a mixed medical commission to determine his eligibility for repatriation to Saudi Arabia and, if he is eligible, to in fact repatriate him. Pet. at 20. His purported right to such a commission derives from Army Regulation 190-8. *See* Dep'ts of Army, Navy, Air Force & Marine Corps, *Enemy Prisoners of War, Retained Personnel, Civilian Internees and Other Detainees*, Army Reg. 190-8 (Oct. 1, 1997), https://perma.cc/B9F9-B3RL ("Army Reg. 190-8"). That regulation "implements" the Third Geneva Convention, *id.* § 1-1(b), and is considered "domestic U.S. law" such that a detainee may invoke it in a habeas proceeding "to the extent that the regulation explicitly establishes a detainee's entitlement

---

[2] In light of those measures, al-Hawsawi's alternative theory that respondents' "nineteen-year delay" in diagnosing a DGBI amounts to deliberate indifference, Opp'n at 23–25, is a nonstarter. As the above allegations of medical treatment demonstrate, this is simply not a case in which medical staff identified a medical risk and inexplicably delayed their treatment of it. *Cf. Boretti v. Wiscomb*, 930 F.2d 1150, 1154–55 (6th Cir. 1991).

to release from custody." *Al Warafi v. Obama*, 716 F.3d 627, 629 (D.C. Cir. 2013); *see* Geneva Convention Relative to the Treatment of Prisoners of War, Aug. 12, 1949, 6 U.S.T. 3316, 75 U.N.T.S. 135 ("Third Geneva Convention").

Relevant here, the regulation makes enemy prisoners of war and retained personnel eligible for direct repatriation if they are (1) "suffering from disabilities as a result of injury, loss of limb, paralysis, or other disabilities, when these disabilities are at least the loss of a hand or foot, or the equivalent"; or (2) sick or wounded with "conditions [that] have become chronic to the extent that prognosis appears to preclude recovery in spite of treatment within 1 year from inception of disease or date of injury." Army Reg. 190-8 § 3-12(*l*). Those medical determinations are made by a mixed medical commission, which convenes upon an application submitted by a prisoner representative. *Id.* § 3-12(a)(2), (c), (h)(2); *see also* Pet. ¶ 164 (stating that al-Hawsawi's prisoner representative applied for a mixed medical commission on November 1, 2021).

Respondents challenge both the Court's jurisdiction to hear al-Hawsawi's claim for a mixed medical commission and his eligibility to have one convened. Although I agree with al-Hawsawi that the Court has subject matter jurisdiction to address this claim, I conclude that al-Hawsawi is not entitled to a mixed medical commission and therefore deny the claim on the merits.

### i. Subject Matter Jurisdiction

In *Boumediene v. Bush*, the Supreme Court held that Congress's withdrawal of jurisdiction over habeas claims brought by Guantanamo detainees, 28 U.S.C. § 2241(e)(1), was an unconstitutional suspension of habeas corpus. 553 U.S. 723, 792

(2008). The Supreme Court did not, however, disturb the adjacent subsection, 28 U.S.C. § 2241(e)(2), which strips jurisdiction over "action[s] other than habeas corpus." *Al-Zahrani v. Rodriguez*, 669 F.3d 315, 319 (D.C. Cir. 2012). Thus, the Court has jurisdiction over "claims [that] fall within the scope of habeas," but not over those that "do not sound in habeas." *Aamer*, 742 F.3d at 1030.

Respondents argue that al-Hawsawi's claim is of the latter variety because the convening of a mixed medical commission would only *potentially* result in his release. Mot. at 18–23. They rely on Supreme Court dicta observing a lack of cases "in which the Court has recognized habeas as . . . an available [remedy] where the relief sought would neither terminate custody, accelerate the future date of release from custody, nor reduce the level of custody." *Skinner v. Switzer*, 562 U.S. 521, 534 (2011) (cleaned up).[3] And they point to *Salahi v. Obama*, in which another court in this district held that it lacked jurisdiction over a habeas claim for a hearing with a periodic review board, an entity tasked with reviewing whether detention of certain Guantanamo detainees is still necessary to protect national security interests, because "the relief [the petitioner sought] (a hearing which would allow the government *to exercise its discretion* to release him) would only possibly result in his release." No. 05-cv-569, 2015 WL 9216557, at *1–3 (D.D.C. Dec. 17, 2015) (emphasis added).

---

[3] *Skinner* decided whether a prisoner could bring an action under 42 U.S.C. § 1983 to obtain DNA testing, or if instead habeas corpus was the prisoner's sole remedy. 562 U.S. at 533–34. In other words, it was a case about the scope of § 1983, not habeas.

10

More on point, however, are three cases in which my colleagues have held that a claim for a mixed medical commission—the request here—*is* within the Court's habeas jurisdiction. *al-Baluchi v. Austin*, No. 08-cv-2083, 2023 WL 5830574, at *5–7 (D.D.C. Sept. 8, 2023); *Bin Lep v. Biden*, No. 20-cv-3344, 2023 WL 2707493, at *4–6 (D.D.C. Mar. 30, 2023); *Al-Qahtani v. Trump*, 443 F. Supp. 3d 116, 125–29 (D.D.C. 2020). As those cases demonstrate, the habeas remedy is broader than respondents give it credit for. Habeas relief is available, for example, to attack one's conditions of confinement, *Al-Qahtani*, 443 F. Supp. 3d at 128–29 (citing *Aamer*, 742 F.3d at 1036), and to obtain future, although not immediate, release, *Bin Lep*, 2023 WL 2707493, at *4 (citing *Chatman-Bey v. Thornburgh*, 864 F.2d 804, 807 (D.C. Cir. 1988)). And as my colleagues in those cases found, *Salahi* is distinguishable factually: the periodic review board there had "discretion" in considering a detainee's status, as did the Secretary of Defense in accepting the board's recommendation; whereas a mixed medical commission's job is not discretionary because it "make[s] findings about the health of an individual [that] lead to a result certain." *Al-Qahtani*, 443 F. Supp. 3d at 127; *Bin Lep*, 2023 WL 2707493, at *5; *al-Baluchi*, 2023 WL 5830574, at *6. If the mixed medical commission determines that "certain criteria are met, the detained individual must be released." *Al-Qahtani*, 443 F. Supp. 3d at 127. Petitioner's request for review by a mixed medical commission is therefore a request for release, which fits "squarely" within the Court's habeas jurisdiction.[4] *Id.* at 129.

---

[4] Respondents alternatively ask the Court to forgo use of its habeas power on "prudential" grounds, arguing that an order to convene a mixed medical commission would intrude on the Defense Department's

11

*ii. Merits*

Army Regulation 190-8 uses a classification system that entails four different classifications of detainees: enemy prisoners of war, retained personnel, civilian internees, and other detainees. Army Reg. 190-8 § 1-1(a). A mixed medical commission is available to two such classifications: enemy prisoners of war and retained personnel. *Id.* § 3-12. Al-Hawsawi concedes he is neither but argues that he is instead an "other detainee," Pet. ¶¶ 20–21, 159, who, according to the regulation, "shall be treated as [an enemy prisoner of war] until a legal status is ascertained by competent authority." Army Reg. 190-8 gloss. § II; *see also id.* § 1-6(a).[5] Al-Hawsawi says that being provisionally entitled to prisoner-of-war status, he is entitled to a mixed medical commission. Opp'n at 37–38; *see Al-Qahtani*, 443 F. Supp. 3d at 130–31 (accepting that line of reasoning in ordering a mixed medical commission).

That argument assumes, however, that the regulation's classification system even applies to al-Hawsawi. *See Bin Lep*, 2023 WL 2707493, at *10. The Third Geneva Convention, which, again, Army Regulation 190-8 implements, Army Reg. 190-8 § 1-1(b), instead indicates that the classification system does *not* apply to him. As

---

interpretation of Army Regulation 190-8 as inapplicable to Guantanamo detainees and would be logistically burdensome to the Defense Department. Mot. at 23–25. Those equity arguments are outmatched by the well-accepted understanding of the habeas writ as "a critical check on the Executive." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004); *see Boumediene*, 553 U.S. at 797 ("[F]ew exercises of judicial power are as legitimate or as necessary as the responsibility to hear challenges to the authority of the Executive to imprison a person."); *see also Al-Qahtani*, 443 F. Supp. 3d at 129 n.7 (rejecting the same arguments raised by respondents here).

[5] An "other detainee" is a "[p]erson[] in the custody of the U.S. Armed Forces who ha[s] not been classified as an [enemy prisoner of war], [retained personnel], or [a civilian internee]." Army Reg. 190-8 gloss. § II.

12

respondents point out, Mot. at 12–13, "[m]ost of the Third Geneva Convention's protections apply only in the context of international armed conflicts," *Bin Lep*, 2023 WL 2707493, at *8, while "some minimal protection, falling short of full protection under the Convention[]," is provided by its Article 3, which governs "armed conflict[s] not of an international character." *Hamdan v. Rumsfeld*, 548 U.S. 557, 630 (2006). Because al-Hawsawi was detained as part of a non-international armed conflict—that is, a conflict with a non-state terrorist organization, as opposed to a conflict between nations, *see id.* at 630–31—he is only entitled to the protections under Article 3.[6] And as an increasing body of case law confirms, those lesser protections under Article 3 do not include entitlement to prisoner-of-war status, even provisionally. *See United States v. Hamidullin*, 888 F.3d 62, 71 (4th Cir. 2018) ("Under Article 3, . . . there is no provision entitling combatants captured during non-international conflicts to POW status . . . ."); *Bin Lep*, 2023 WL 2707493, at *10 ("Guantanamo detainees . . . are not prisoners of war and cannot be 'other detainees' because those classifications are only available to those detained during international armed conflicts."); *al-Baluchi*, 2023 WL 5830574, at *8 ("Persons like [the petitioner] captured during non-international armed conflicts are not

---

[6] Respondents also argue that al-Hawsawi is not entitled to the Convention's full protections because, as a member of al-Qaeda, he was classified by a combatant status review tribunal as an "enemy combatant," as the Department of Defense has defined that term for purposes of justifying detention at Guantanamo. Mot. at 28–29; *see Hamdan*, 548 U.S. at 570 & n.1; Off. for the Admin. Rev. of the Detention of Enemy Combatants, Dep't of Def., Final Review of Combatant Status Review Tribunal, ISN 10011 (Apr. 30, 2007) [Dkt. #12-3]; *see also* Statement by the Press Secretary on the Geneva Convention (Feb. 7, 2002), https://perma.cc/79EL-NGAZ (determining that al-Qaeda cannot be considered a state party to the Geneva Conventions and so its members are not entitled to the full protections of the Conventions). But "enemy combatant" is "a descriptor not found in Army Regulation 190-8," *Al-Qahtani*, 443 F. Supp. 3d at 130, and thus does not, on its own, affect al-Hawsawi's potential status as an "other detainee."

afforded prisoner-of-war status."). Accordingly, al-Hawsawi is not entitled to provisional prisoner-of-war status and thus not entitled to examination by a mixed medical commission under Army Regulation 190-8.[7]

The Court will therefore enter judgment for respondents on al-Hawsawi's claim for medial repatriation pursuant to Army Regulation 190-8.

## IV. CONCLUSION

For the foregoing reasons, Respondents' Motion to Dismiss or for Judgment is GRANTED. An order consistent with this decision accompanies this Memorandum Opinion.

RICHARD J. LEON
United States District Judge

---

[7] Petitioner and respondents also dispute the validity of a memorandum recently issued by the Secretary of the Army excepting Guantanamo detainees from Regulation 190-8's applicability. Mot. at 29–30; Opp'n at 38–41; see Mem. from Ryan D. McCarthy, Secretary of the Army, to Commander, U.S. Southern Command, Army Reg. (AR) 190-8 Clarification/Exception (Jan. 11, 2021) [Dkt. #12-1]. Because the Court concludes that al-Hawsawi is not entitled to provisional prisoner-of-war status without regard to the memorandum, the Court provides no opinion on this dispute.